## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| ANAGRAM INTERNATIONAL LLC, | **FILED UNDER SEAL** |
| Plaintiff, | Civil Action No. |
| v. | |
| THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR AUTHORIZATION TO SERVE PROCESS ON DEFENDANTS BY ELECTRONIC MEANS PURSUANT TO FED. R. CIV. P. 4(f)(3)**

Pursuant to Federal Rule of Civil Procedure 4(f)(3), Plaintiff, Anagram International LLC ("Plaintiff"), requests this Court's authorization to serve process by electronically publishing a link to the Complaint, the Temporary Restraining Order, and other relevant documents on a website and by sending an e-mail with a link to said website to an e-mail address for each Defendant. Plaintiff submits that providing notice via electronic publication and e-mail, along with any notice that Defendants receive from payment processors, is reasonably calculated under all

1

circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections.

Electronic service is appropriate and necessary in this case because off-shore e-commerce store operators offering for sale products using infringing intellectual property typically: (1) provide false, misleading and/or incomplete names and physical address information to conceal their locations and avoid liability for their unlawful conduct; and (2) rely primarily on electronic communications to communicate with their third party service providers and customers, demonstrating the reliability of this method of communication by which Defendants may be apprised of the pendency of this action. *See* Declaration of Jayma C. Leath (the "Leath Declaration") at ¶ 2. Authorizing service of process solely via e-mail and electronic publication will benefit all parties and the Court by ensuring that Defendants receive prompt notice of this action, thus allowing this action to move forward expeditiously. Absent the ability to serve Defendants in this manner, Plaintiff will almost certainly be left without the ability to pursue a final judgment.

An investigation of the e-commerce stores operating under the Seller Aliases identified in the Complaint shows that few, if any, provide a complete and accurate physical address on the e-commerce store. Leath Declaration at ¶ 3; *see also Aquapaw Brands LLC v. Yan-Peng*, 2023 WL 3538551, 2023 U.S. Dist. LEXIS 89327, at *5 (W.D. Pa. May 18, 2023) ("Aquapaw asserted patent infringement

claims against off-shore e-commerce merchants … these types of defendants are unlikely to provide a legitimate physical address when creating their accounts. … This stems from the fact that when providing an email address to a third-party online marketplace, such as Amazon, AliExpress, or eBay, a merchant must verify the email address when registering its account, but no such verification process is required for a physical address.").

In most instances, Defendants must provide an e-mail address to third- party online marketplace platforms such as PayPal, Amazon, eBay, TikTok, and Walmart when registering their account. *Id.* E-mail address verification is typically a straightforward process where the third-party online marketplace platforms send an e-mail to the provided e-mail address and require the user to click a link in the e-mail. *Id.* Since an e-commerce store operator can input any physical address, such addresses may be incomplete, false and/or are not where the e-commerce store operator is located. *Id.* As such, even if a physical address is available, it is not a reliable or the best means for providing notice to Defendants. *Id.*

In addition, e-commerce store operators must provide a valid e-mail address to customers for completing payment and/or managing their e-commerce stores. Moreover, it is necessary for merchants, such as Defendants, who operate entirely online, to visit their e-commerce store to ensure it is functioning and to communicate with customers electronically. E-commerce platforms are also required to obtain a

working e-mail address from sellers under the INFORM Consumers ACT. *See* 15 U.S.C. § 45f. As such, it is far more likely that Defendants can be served electronically than through traditional service of process methods.

Federal Rule of Civil Procedure 4(f)(3) allows this Court to authorize service of process by any means not prohibited by international agreement as the Court directs. *Brookshire Bros., Ltd. v. Chiquita Brands Int'l*, 2007 WL 1577771, at *2 (S.D. Fla. 2007) (denying motion to quash where the Court previously granted motion to serve by alternative means); *Rio Props. Inc., v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002) (affirming trial court's authorization of service pursuant to Rule 4(f)(3) without first exhausting all other options). The Ninth Circuit in *Rio Properties* held, "without hesitation," that e-mail service of an online business defendant "was constitutionally acceptable." *Id.* at 1017. The Court reached this conclusion, in part, because the defendant conducted its business over the Internet, used e-mail regularly in its business, and encouraged parties to contact it via e-mail. *Id.*

Plaintiff has good cause to suspect the Defendants are all residents of China, Hong Kong, or other foreign jurisdictions. The People's Republic of China is a signatory to the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters (the "Hague Convention"). Leath Declaration at ¶ 4.

According to Article 1 of the Hague Convention, the "convention shall not apply where the address of the person to be served with the document is not known." *Id.*; *see also U.S. Commodity Futures Trading Comm'n v. Rubio*, 2012 WL 3614360, at *2 (S.D. Fla. 2012) (holding that "the Hague Service Convention is not applicable here because it 'shall not apply where the address of the person to be served with the documents is not known.'"); *Philip Morris USA Inc. v. Veles Ltd.*, 2007 WL 725412, at *2 (S.D.N.Y. 2007) (finding the Hague Service Convention inapplicable because physical addresses could not be confirmed as valid). United States District Courts, including Courts in this District, routinely permit alternative service of process notwithstanding the Hague Convention. The U.S. Bankruptcy Court for the Northern District of Georgia was one of the first federal courts in the country to authorize service of process by electronic mail. *In re Int'l Telemedia Associates, Inc*., 245 B.R. 713 (Bankr. N.D. Ga. 2000). In doing so, the Court emphasized the reliability of using the defendant's preferred channels of communication:

> "If any methods of communication can be reasonably calculated to provide a defendant with real notice, surely those communication channels utilized and preferred by the defendant himself must be among them…. A defendant should not be allowed to evade service by confining himself to modern technological methods of communication not specifically mentioned in the Federal Rules. Rule 4(f)(3) appears to be designed to prevent such gamesmanship by a party."

*In re Int'l Telemedia*, 245 B.R. at 721. Many courts since the *Telemedia* decision have followed suit and approved of service by electronic means, including e-mail,

website publication, and online social media platforms such as Facebook and Twitter. *See, e.g., Rio Props*., 284 F.3d 1007, 1017 (9th Cir. 2002) (holding "without hesitation" that e-mail service of a foreign online business defendant is constitutional); *National Association for Stock Car Auto Racing, Inc. v. Does*, 584 F. Supp. 2d 824, 826 (W.D.N.C. 2008) (authorizing service by publication on plaintiff's website.); *Popular Enters., LLC v. Webcom Media Group, Inc*., 225 F.R.D. 560, 562 (E.D. Tenn. 2004) (authorizing service by e-mail); *U.S. v. Mohammad,* 249 F. Supp.3d 450, 454 (D.D.C. 2017) (authorizing service by Facebook message and e-mail); *St. Francis Assisi v. Kuwait Finance House*, 2016 WL 5725002 (N.D. Cal. 2016) (authorizing service by Twitter).

The plain language of Rule 4 requires only that service be made as directed by the court and not prohibited by international agreement. *In re Potash Antitrust Litig*., 667 F. Supp. 2d 907, 930 (N.D. Ill. 2009) ("plaintiffs are not required to first attempt service through the Hague Convention."); *see also Strabala v. Zhang*, 318 F.R.D. 81, 114 (N.D. Ill. 2016) (authorizing alternative service pursuant to Fed. R. Civ. P. 4(f)(3)); *Sulzer Mixpac AG v. Medenstar Indus. Co*., 312 F.R.D. 329, 331–32 (S.D.N.Y. 2015) (same); *In re LDK Solar Securities Litigation*, 2008 U.S. Dist. LEXIS 90702, at *11 (N.D. Cal. June 12, 2008) (same); *Williams-Sonoma Inc. v. Friendfinder Inc*., 2007 U.S. Dist. LEXIS 31299, at *5–7 (N.D. Cal. Apr. 17, 2007)

(same); *NBA Properties, Inc. v. P'ships, et al.*, 549 F. Supp. 3d 790, 797 (N.D. Ill. 2021) (same), aff'd on other grounds, 46 F.4th 614 (7th Cir. 2022).

The Hague Convention also does not preclude service by e-mail, and the declarations to the Hague Convention filed by China do not appear to prohibit e-mail service. *See Facebook, Inc. v. 9 Xiu Network Shenzhen Tech. Co.*, 480 F. Supp. 3d 977, 982 (N.D. Cal. 2020) (citing cases); *Lexmark Int'l, Inc. v. Ink Techs. Printer Supplies, LLC,* 295 F.R.D. 259, 261 (S.D. Ohio 2013) ("[v]arious courts have agreed that service by e-mail is not prohibited by the Hague Convention"); *Facebook, Inc. v. Banana Ads, LLC*, 2012 U.S. Dist. LEXIS 42160, at \*6–7 (N.D. Cal. Mar. 27, 2012) (citing cases where courts held that service by e-mail did not violate the Hague Convention as to foreign defendants, including in China).

In addition, the law of the People's Republic of China does not appear to prohibit electronic service. Thus, because the declaration to the Hague Convention filed by China does not object to email, "a court acting under Rule 4(f)(3) remains free to order alternative means of service that are not specifically referenced in Article [10]." *Gurung v. Malhotra*, 279 F.R.D. 215, 219 (S.D.N.Y. 2011) (citing *Richmond Techs. Inc. v. Aumtech Bus. Solutions*, No. 11-cv-2460, 2011 U.S. Dist. LEXIS 71269, 2011 WL 2607158, at \*12-13 (N.D. Cal. July 1, 2011)); *see also WhosHere, Inc. v. Orun,* No. 13-cv-00526, 2014 U.S. Dist. LEXIS 22084, at \*9 (E.D. Va. Feb. 20, 2014) (authorizing email service, noting a country's objection to

7

means of service listed in Article 10 "is specifically limited to the enumerated means of service in Article 10."); *FTC v. PCCare247 Inc*., No. 12-cv-7189, 2013 U.S. Dist. LEXIS 31969, at *10 (S.D.N.Y. March 7, 2013) (authorizing service of process via email and Facebook, noting "Numerous courts have held that service by email does not violate any international agreement where the objections of the recipient nation are limited to those means enumerated in Article 10.").

Furthermore, Rule 4 does not require that a party attempt service of process by other methods enumerated in Rule 4(f) before petitioning the court for alternative relief under Rule 4(f)(3). *Rio Props*., 284 F.3d at 1014–15. As the *Rio Properties* Court explained, Rule 4(f) does not create a hierarchy of preferred methods of service of process. *Id.* at 1014. To the contrary, the plain language of the Rule requires only that service be directed by the court and not be prohibited by international agreement. There are no other limitations or requirements. *Id.* Alternative service under Rule 4(f)(3) is neither a "last resort" nor "extraordinary relief," but is rather one means among several by which an international defendant may be served. *Id.* Likewise, Courts have confirmed that the Hague Convention does not displace Rule 4(f)(3). *See Gianni Versace, S.P.A. v. P'Ships, et al.,* 2019 U.S. Dist. LEXIS 94989 at *3 (N.D. Ill. Feb. 27, 2019) (citing *Nagravision SA v. Gotech Int'l Tech. Ltd.*, 2018 U.S. App. LEXIS 2976 (5th Cir. 2018)) ("Overlooking Rule 4(f)(3) entirely, Gotech argues that the service did not comply with the Hague

Convention and Rule 4(f)(1). This argument misses the mark because service was not effected pursuant to the Hague Convention, and that agreement does not displace Rule 4(f)(3).")).

Finally, Court-directed electronic service pursuant to Rule 4(f)(3) is particularly appropriate in this case where "there is a need for speed that cannot be met by following the Hague Convention methods ..." because of the injunctive relief sought by Plaintiff. *Strabala v. Zhang*, 318 F.R.D. 81, 114 (N.D. Ill. 2016) (citing 4B FED. PRAC. & PROC. CIV. § 1134 (4th ed.)). As such, this Court may allow Plaintiff to serve the Defendants via electronic publication and e-mail.

For the reasons set forth herein, Plaintiff respectfully requests this Court to authorize Plaintiff to notify Defendants and Third Party Providers of the TRO, and to serve the Summonses, Complaint, and all subsequent pleadings and documents via e-mail and electronic publication.

Dated: August 14, 2025                    Respectfully submitted,

**/s/ Jayma C. Leath**
Jayma C. Leath, Esq.
Georgia Bar No. 639678
**HIGBEE & ASSOCIATES**
3110 W. Cheyenne, Suite 200
Las Vegas, NV 89032
(714) 617-8350
(714) 597-6729 facsimile
jleath@higbee.law

Shengmao (Sam) Mu, *pro hac vice pending*
Abby Neu, *pro hac vice pending*
Ryan E. Carreon, *pro hac vice pending*
**WHITEWOOD LAW PLLC**
57 West 57th Street, 3rd and 4th Floors
New York, NY 10019
Telephone: (917) 858-8018
Email: smu@whitewoodlaw.com

*Counsel for Plaintiff*

## **<u>CERTIFICATE OF COMPLIANCE</u>**

Pursuant to L.R. 7.1(D), counsel certifies that the foregoing document complies with one of the font type and size selections approved by the Court in L.R. 5.1(C): Times New Roman 14-point font.


**<u>/s/ Jayma C. Leath</u>**
Jayma C. Leath